## PUGET SOUND ELECTRIC RY. et al. v. BENSON.

(Circuit Court of Appeals, Ninth Circuit.   October 28, 1918.)

No. 3147.

1. STATUTES ⊕⇒196—CONSTRUCTION—CANONS.
    A limiting clause is to be restrained to the last antecedent, unless the subject-matter requires a different construction.

2. STATUTES ⊕⇒200—CONSTRUCTION—COMMAS.
    The use of commas is not controlling, where the meaning is otherwise clear.

3. MUNICIPAL CORPORATIONS ⊕⇒703(1)—TRAFFIC ORDINANCES—FIRE DEPARTMENT.
    An ordinance declaring that apparatus of the fire department, etc., ambulances, responding to emergency calls, etc., should have right of way in use of streets, gives fire apparatus returning from a fire the right of way.

4. EVIDENCE ⊕⇒595—"INFERENCE"—WHAT FOR.
    An "inference" is a permissible deduction, which the jury is entitled to draw from the evidence, and which has no probative effect, other than the jury is pleased to attribute to it.
    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Inference.]

5. EVIDENCE ⊕⇒53—"PRESUMPTIONS OF LAW."
    "Presumptions of law" are artificial rules, which have legal effect, independent of any belief, and stand in the place of proof until the contrary is shown.
    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Presumption of Law.]

6. STREET RAILROADS ⊕⇒91—SPEED ORDINANCE VIOLATION—EFFECT.
    The violation of an ordinance limiting the speed of street cars is negligence per se, and it is proper for the court to announce the presumption of negligence.

7. MUNICIPAL CORPORATIONS ⊕⇒122(2)—SPEED ORDINANCE—REASONABLENESS—BURDEN OF PROOF.
    An ordinance regulating the speed of street cars is prima facie reasonable, and the burden is on those attacking to show its unreasonableness.

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Edward E. Cushman, Judge.

Action by Harvey K. Benson against the Puget Sound Electric Railway, a corporation, and others.  There was judgment for plaintiff, and defendants bring error.  Affirmed.

James B. Howe and Hugh A. Tait, both of Seattle, Wash., for plaintiffs in error.

Griffin & Griffin, of Seattle, Wash., for defendant in error.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WOLVERTON, District Judge. This action is one to recover damages for personal injuries alleged to have been sustained by Benson, the defendant in error (plaintiff below), who was at the time in the employ of the fire department of the city of Seattle. While driving a motor-propelled apparatus, known as a "water tower," belonging to the fire department, easterly along Connecticut street, an electric street car collided with it at the junction of First avenue, which runs at right angles with the above-named street, whereby the plaintiff received the injuries of which he complains. The water tower was at the time returning from, and not going to, a fire.

[1-3] The court was requested at the trial to instruct the jury that Ordinance No. 24597 of the city of Seattle was without application. The request was denied, and error is assigned. The ordinance provides:

"The following vehicles in the order named, shall have the right of way in the use of all streets and public places, viz., apparatus of the fire department, police patrol wagons, ambulances, responding to emergency calls, emergency repair wagons of the street railway companies, and U. S. mail wagons."

The question involved is one of construction. It is insisted that the words "responding to emergency calls" qualify the phrase "apparatus of the fire department," as well as "ambulances," and therefore that it is only when the apparatus of the fire department is responding to an emergency call that it is accorded the right of way under the ordinance.

The application of one of the simplest canons of statutory construction, namely, that "a limiting clause is to be restrained to the last antecedent, unless the subject-matter requires a different construction" (Cushing v. Worrick, 9 Gray [Mass.] 382, and Endlich on the Interpretation of Statutes, § 414), would seem to be decisive of the question. The last antecedent is "ambulances," and under this rule the qualifying clause refers thereto, and not to the antecedents preceding that. Nor does the subject-matter require a different construction. All alarms of fire are emergency calls, and police patrol wagons are brought into service whenever their use is thought to be convenient. So that the supposed qualifying words "responding to emergency calls" would seem to be redundant and useless as applying to these antecedents. They have a peculiar fitness, however, when applied to ambulances. When acting under emergency, it is essential that ambulances move swiftly, until the call has been attended to, without reference to the direction in which they are required to travel, whether to or from; hence the need of according them the right of way upon the streets until the emergency has been met. Otherwise, ambulances are to be afforded no greater privileges upon the streets than other vehicles. On the other hand, fire and police protection may depend as well upon prompt action in housing the fire apparatus and having patrol wagons convenient for any emergency, so that, whether the fire department or the police department is responding to one call or making ready to meet the exigencies of another, it is an act required for rendering prompt and proper fire or police protection, which is the essential purpose of the ordinance. Upon the whole, in

view of the context and of the grammatical construction and the plain purpose of the ordinance, it is clear that the clause "responding to emergency calls" was intended to qualify none of the antecedents except "ambulances." See, further, City of Traverse City v. Blair Twp., 190 Mich. 313, 322, 323, 157 N. W. 81. The use of commas is not controlling where the meaning is otherwise clear.

Whatever may be the true construction to be accorded rule 20, it does not affect the present inquiry. We agree, therefore, with the construction which the trial court gave to this ordinance.

A far more interesting and difficult question is one relating to the court's instruction respecting negligence, as it affected the defendants in the operation of the street car which collided with the water tower.

There is an ordinance which declares that it shall be lawful to operate cars upon street railways within the city limits at a rate of speed up to, but not in excess of, 20 miles per hour. As to the bearing of the ordinance, the court instructed as follows:

"Now, so far as those ordinances are concerned, ordinances of that character are not only for the convenience of the traveling public, but in part for their safety, and where a person violates an ordinance of the city, that is designed to render safe or more safe the lives and limbs of the traveling public, the person who violates such an ordinance is guilty of negligence. This instruction applies to both plaintiff and defendant in this particular case. * * * You understand that, so far as violating one of these ordinances, this ordinance regulating the rate of speed in the city is concerned, by violating that ordinance the city in effect says that it is negligent to run faster than 20 miles an hour, so you would not concern yourselves whether you think an ordinarily careful and prudent person would run faster than that in the city or not."

In connection with the instructions, the court advised the jury further that it was incumbent upon the plaintiff to "establish by a fair preponderance of the evidence that such negligence of the defendant was the proximate cause of his injury." It was left to the jury to say whether the car was being operated in excess of 20 miles per hour.

Thus is presented for our inquiry the question whether the operation of the street car in excess of the ordinance limitation as to speed, where it contributed as the proximate cause of the injury, was negligence per se. This, of course, assumes that the plaintiff was not himself guilty of contributory negligence.

It seems to be the opinion of counsel for the plaintiffs in error that the Supreme and federal courts of the United States are committed to a rule that the violation of a city ordinance regulating the speed of vehicles is evidence of negligence only, and does not constitute negligence as a matter of law. The only case cited that appears directly to support the rule as thus broadly stated is Erie R. Co. v. Farrell, 147 Fed. 220, 77 C. C. A. 446. In that case the trial court instructed the jury in effect to find upon the issue of negligence for the plaintiff, because the evidence was uncontradicted that the train of the defendant was moving in excess of the speed permitted by the city ordinance. The trial court also refused to instruct, at the request of the defendant:

"That the defendant's failure to comply with the ordinance did not in itself constitute conclusive proof of negligence, and that it was for the jury to say, in view of the situation and surroundings in that part of the city and all the circumstances, whether the failure to comply was negligence."

The Court of Appeals held this to be error, saying:

"The rule established by the weight of authority is that the violation of the ordinance is not conclusive evidence of negligence, but is to be submitted to the jury as a circumstance from which negligence may be inferred."

Referring to the case of Grand Trunk Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485, the trial court instructed that by reason of the railroad train moving in excess of the rate of speed forbidden by a city ordinance the law authorized the jury to infer negligence, "as one of the facts established by the proof." The Supreme Court after premising that it has been held in many cases that the running of railroad trains within the limits of a city at a rate of speed greater than is allowed by ordinance is negligence per se, says:

"But perhaps the better and more generally accepted rule is that such an act on the part of the railroad company is always to be considered by the jury as at least a circumstance from which negligence may be inferred in determining whether the company was or was not guilty of negligence."

And, after citing authorities, concludes:

"At any rate, the charge of the court, in this particular, was not unfavorable to the defendant under the law."

It is plain that there was no decision on the direct question whether the running of a train in excess of the speed limitations of an ordinance was negligence per se. We have, however, an expression of the opinion of that court as to what is deemed the better rule. In Hayes v. Michigan Central R. R. Co., 111 U. S. 228, 240, 4 Sup. Ct. 369, 28 L. Ed. 410, the court distinctly holds that an action will lie for a breach of duty in failure to conform to the requirements of a city ordinance, and that such breach will be evidence of negligence. In this relation, the court further says:

"The duty is due, not to the city as a municipal body, but to the public, considered as composed of individual persons; and each person specially injured by the breach of the obligation is entitled to his individual compensation and to an action for its recovery."

As it respects a law of Congress, and the effect of a violation of its provisions, the court has spoken in no uncertain language. Having reference to the Safety Appliance Act (Comp. St. 1916, § 8605 et seq.), in St. Louis, Iron Mountain & Southern Ry. v. Taylor, 210 U. S. 281, 295, 28 Sup. Ct. 616, 621 (52 L. Ed. 1061), it has declared that:

"The obvious purpose of the Legislature was to supplant the qualified duty of the common law with an absolute duty deemed by it more just. If the railroad does, in point of fact, use cars which do not comply with the standard, it violates the plain prohibitions of the law, and there arises from that violation the liability to make compensation to one who is injured by it."

That the violation of such an act would constitute negligence per se can hardly be questioned. The only distinction that can be drawn

between the effect of an act of Congress in that particular and the ordinance of a common council of a municipality is that the chances would be that, by reason of the larger experience of the members of Congress, Congress would promulgate more uniformly reasonable regulations. But presumptively the reasonableness of the regulations must obtain in either case until overcome by competent and pertinent inquiry. Thus we have about all there is of a rule of the federal courts as contended for by counsel.

When we turn to the state courts, we find their adjudications on the subject of discussion in hopeless discord. So that it is bootless to attempt to examine the accumulated mass of decisions pertaining thereto and deduce a rule by weight of authority. See the extended and exhaustive note to Sluder v. St. Louis Transit Co., 5 L. R. A. (N. S.) 187.

A more satisfactory result can be arrived at through examination of the subject on primary principles governing the effect of evidence.

[4] An inference is a permissible deduction which the jury is entitled to draw from the evidence. It has no legal probative effect other than the jury is pleased to attribute to it in a given case. Cogdell v. Railroad Co., 132 N. C. 852, 44 S. E. 618.

[5] Presumptions of law are artificial rules which have legal effect independent of any belief, and stand in the place of proof until the contrary is proven. Smith v. Asbell, 2 Strob. (N. C.) 141, 147.

Mr. Wigmore speaks of a presumption in its characteristic feature as—

"a rule of law laid down by the judge, and attaching to one evidentiary fact certain consequences as to the duty of the production of other evidence by the opponent." 4 Wigmore on Evidence, § 2491.

Later in the same section, the learned author says:

"Nevertheless, it must be kept in mind that the peculiar effect of a presumption 'of law' (that is, the real presumption) is merely to invoke a rule of law compelling the jury to reach the conclusion in the absence of evidence to the contrary from the opponent."

Comparing the two, the court, in Cogdell v. Railroad Co., supra, says:

"The presumption has a technical force of weight and the jury, in the absence of sufficient proof to overcome it, should find according to the presumption, but in the case of a mere inference there is no technical force attached to it. The jury, in the case of an inference, are at liberty to find the ultimate fact one way or the other as they may be impressed by the testimony. In the one case the law draws a conclusion from the state of the pleadings and evidence and in the other case the jury draw it. An inference is nothing more than a permissible deduction from the evidence, while a presumption is compulsory and cannot be disregarded by the jury."

[6, 7] Now, what should be the probative value of the circumstance of operating a street car in excess of a speed limit fixed by ordinance adopted for the benefit and protection of the public, where it is charged that the excessive operation of the car is an act of negligence causing injury to the person? Is the circumstance simply one from which, to be considered along with all the testimony in the case bearing upon the subject, the jury may or may not infer negligence,

or is it one of positive probative value, that will, prima facie and without else, support the charge of negligence? If, as is declared by the Supreme Court in Hayes v. Michigan Central R. R. Co., supra, the duty imposed by the municipality is one due to the public, which is the case in the present controversy, and the individual is accorded a right of action against a street car company for a breach of the obligation imposed by the ordinance, why does it not logically and necessarily follow that, when the breach is established—that is, when it is shown that the company has exceeded the limitation of speed fixed by the ordinance—a prima facie case of negligence is made out, and the burden is hence imposed upon the company to overcome the prima facie case? We think there is no escape from the conclusion that it does. If it does, then the fact of a violation of the speed limitation renders the company presumptively negligent, and the presumption is one of law for the court to declare. Being one of law, the violation is per se negligence.

Of, course, the burden is upon the one who alleges it to establish the fact that the speed limitation has been violated, and that is a matter primarily for the jury. But when it is established to their satisfaction, the presumption of negligence follows because of a breach of the obligation imposed by the ordinance. This is negligence per se. To attribute to such a state of the case the probative value of a mere inference from which the jury might or might not deduce negligence would be to destroy the efficacy of the ordinance. The case would stand as if there were no ordinance regulating speed, and the whole question would be relegated, as one of fact for the jury to determine, whether the street car company had exercised reasonable care and precaution in the running of its cars. It would be of little or no value to tell the jury that they should take into consideration the fact that the company had exceeded the speed limitations of the ordinance along with the other facts and circumstances of the case. Besides, it would put into the hands of the jury the power of invalidating the ordinance without any inquiry whatever on that subject.

We have said that the fact of a violation of the speed ordinance is prima facie sufficient to establish negligence. This prima facie case would obtain until overcome by competent proof to the contrary. The issue then arising would be this: The ordinance having been adopted by legal and competent authority, its reasonableness must be taken for granted until the contrary is shown. This would involve an attack upon the ordinance, and the burden would be cast upon those attacking it to show its unreasonableness in the particular assigned, and that because of that fact the provision was one beyond the power of the common council in the performance of its legislative functions to adopt. This was the course pursued in Erie R. Co. v. Weber, 207 Fed. 293, 125 C. C. A. 37.

We hold, therefore, that where a municipal ordinance limits the rate of speed for operating street cars upon the public streets of a city, and such ordinance is adopted for the benefit and protection of the public, it is negligence per se to operate a street car in excess of

such limitation as to speed. It follows that the court below did not err in giving the instructions complained of.

The only federal case that has been called to our attention really opposed to this view is Erie R. Co. v. Farrell, supra; but, with all deference to that able tribunal, we are persuaded that the rule here announced is the better and more logical.

Affirmed.