### C. A. CHAR *v.* HONOLULU RAPID TRANSIT COMPANY, LIMITED.

### No. 1885.

ARGUED JUNE 17, 1929.                    DECIDED JUNE 27, 1929.

PERRY, C. J., BANKS, J., AND CIRCUIT JUDGE STEADMAN IN PLACE OF PARSONS, J., ABSENT.

OPINION OF THE COURT BY BANKS, J.

The plaintiff's automobile was injured by a collision with the defendant's street car on Alakea street in the city of Honolulu. The plaintiff sued for damages. The jury returned a verdict in favor of the defendant and the plaintiff brings the case here on a bill of exceptions. The only exception relied on is to the giving of the following instruction at the defendant's request: "I instruct you that the violation of either of the two ordinances just read constitutes negligence." The two ordinances referred to in the instruction, and which had been received in evidence, are as follows: "Every person riding, driving, operating, propelling or in charge of any vehicle or street car upon any of the highways shall ride, drive, operate or propel such vehicle or street car upon such highways in a careful manner and with due regard for the safety and convenience of pedestrians and all other vehicles or street cars upon such highways. No person or persons shall impede the right of travel of any vehicle or street car." (Rev. Ord. 1923, Sec. 412.) "The person in charge of any vehicle in or upon any highway, before turning, stopping or changing the course of such vehicle, and when starting the same, shall see first that there is sufficient space for such movement to be made in safety, and if the movement or operation of other vehicles may reasonably be affected by such turning, stopping or changing of course, shall give plainly visible signal to the persons operating, driving or in charge of such vehicles of his intention so to turn, stop or change his course, either by the use of his hand and arm, which if used, must be visible from the rear, or by the use of an approved mechanical

or electrical device. Any such device shall upon application to the sheriff be tested and, if approved, be certified by him as adequate to give the signal herein required. * * * In pulling out from the curb the intention to turn shall be indicated by the full arm signal as hereinbefore specified for turning and in addition thereto a warning shall be sounded by the use of a horn or other device." (*Ib.*, Sec. 425.)

The evidence introduced on behalf of the plaintiff tended to show that at about four o'clock P. M. on the 15th or 16th of October, 1923, he parked a Ford car owned by him against the curb on the Ewa side of Alakea street, near the entrance to the Mutual Telephone building, and went into the building to pay a bill; that there were several other cars in front of his car and several in the rear of it; that the distance between his car and the one immediately in front of it was five or six feet and that the same distance separated his car from the one immediately in its rear; that after paying his bill he re-entered his car, started the engine and looked back to see if the street was clear; that he saw a street car approaching, which was at that time a distance of 225 feet from him; that before moving his car he extended his arm but did not sound his horn; that he then started his car and turned to the left and when it got onto the defendant's tracks, a distance of about three feet, his engine stalled; that he again looked back and saw that the street car was about 125 feet from him and moving towards him at the rate of twenty or twenty-five miles an hour; that he thereupon signalled for ten or fifteen seconds by waving his hand in a backward motion, but the street car came ahead and crashed into his automobile and seriously damaged it; that as soon as his engine stalled he began using and continued to use all the appliances with which the car was equipped to start it again, but without avail.

The evidence introduced on behalf of the defendant tended to show that the motorman in charge of the street car had an unobstructed view of Alakea street, in front of him, from Beretania street to the point of the accident and that as he progressed he noticed several automobiles parked on the Ewa side of Alakea street; that upon entering a switch on Alakea street, about fifty feet makai of Beretania street, he reduced the speed of his car to five miles an hour but after getting on the switch he increased the speed to fifteen miles an hour, which speed he maintained until he reached the Mutual Telephone Company building, a few feet from the point of the accident; that he then reduced the speed to ten miles an hour in order to make a gradual stop at Hotel street, which was the next street makai and only a short distance away; that when the street car was within fifteen to twenty feet from the point of the accident and running at the rate of ten miles an hour the plaintiff, without giving any warning by extending his arm or otherwise, suddenly turned his Ford car out from the curb toward the street car track and so near to the track that it was struck on the left front fender by the street car; that as soon as the motorman saw that the plaintiff had turned out from the curb he applied his emergency brake but was unable to stop in time to avoid the collision; that the engine of the Ford did not stall on the track prior to the collision and the plaintiff made no motion by waving his hand.

Out of these conflicting tendencies of the evidence (which are the only phases of the evidence we deem it necessary to consider) certain issues arose, upon the settlement of which the rights of the parties are determinable. It is conceded that all these issues save one were issues of fact and that it was solely within the province of the jury, under the instructions of the court, to decide them. No complaint is made that the issues that were

submitted to the jury were improperly submitted. The issue about which the parties are in disagreement is whether, as a matter of law, the plaintiff was guilty of negligence if the jury believed from the evidence that he violated either of the two ordinances of the City and County of Honolulu above quoted. It was contended by the defendant that such conduct on the part of the plaintiff would, *ipso facto,* be negligence. It was contended by the plaintiff, on the other hand, that it should be left to the jury to decide whether under all the circumstances of the case a violation of either or both of the two ordinances constituted negligence on his part. The court below held with the defendant and instructed the jury accordingly. The plaintiff claims that this was error.

The question thus presented is not free from embarrassment. There is much conflict among judicial writers on the subject and in the absence of direct precedent in this court we feel at liberty to adopt the rule that seems to us most nearly in accord with reason and justice. Circumstances are conceivable under which we would not hesitate to say that a violation of the rules adopted by legislative authority for the regulation of vehicular traffic on the public streets and highways would be negligence as a matter of law. Taking certain aspects of the evidence in the instant case, in their relation to the first ordinance above quoted, for example, if the plaintiff turned his automobile away from the curb and within the path of the approaching street car when it was only fifteen or twenty feet from him and moving at the rate of fifteen or even ten miles an hour, without giving the signals required by one of the ordinances, it was, unquestionably, negligence as a matter of law. Every reasonable person would know that such conduct was imprudent and dangerous. There could be no rational difference of opinion about it. On the other hand, if the plaintiff, before leaving the

curb, looked back and saw that the street car was 225 feet in his rear, moving at any one of the various rates of speed indicated by the evidence, his failure to give the signals might or might not have fallen under the condemnation of reasonable persons. A perfectly reasonable man might say that under these circumstances an experienced driver operating a light and easily handled car took no substantial risk in turning away from the curb and onto the street car track and therefore it was not imprudent for him to do so without extending his arm or sounding his horn. Another equally reasonable man might take the contrary view. The instruction complained of required the jury to find that a failure by the plaintiff to give the signals constituted negligence under either of the foregoing circumstances. We have no means of knowing which of these circumstances the jury found to be established by the evidence. If the latter, and the question of whether the plaintiff's failure to give the signals in fact constituted negligence had been left to the judgment of the jury, under proper instructions, no one can say what the verdict might have been. Under our view of the law the plaintiff was entitled to have the question submitted to the jury.

In *Grand Trunk Railway Co.* v. *Ives,* 144 U. S. 408, a case in which this question is discussed, the administrator of the estate of Elijah Smith sued the railroad company and recovered a verdict for wrongfully causing the death of his intestate. The fatal accident occurred at a grade crossing in the city of Detroit. An ordinance prohibiting the running of trains within the limits of the city at a greater rate of speed than six miles an hour was received in evidence. There was substantial evidence that the defendant's train which struck the plaintiff's intestate and caused his death was at the time of the accident running at a greater rate of speed than that permitted by the

ordinance. The trial court gave the following instruction, which was assigned as error: "If you find from the evidence in this case that the railroad train which killed Elijah Smith was moving at a rate of speed forbidden by the city ordinances, * * * the law authorizes you to infer negligence on the part of the railroad company as one of the facts established by the proof." The court, in commenting on this instruction, said (p. 418) : "As there was a great deal of evidence introduced on behalf of the plaintiff that the train which killed Mr. Smith was running at a much more rapid rate than the ordinance permitted, the instruction quoted was applicable, and, under the authorities, was as favorable to the defendant as it had the right to demand. Indeed, it has been held in many cases that the running of railroad trains within the limits of a city at a rate of speed greater than is allowed by an ordinance of such city is negligence *per se*. * * * But, perhaps, the better and more generally accepted rule is that such an act on the part of the railroad company is always to be considered by the jury as at least a circumstance from which negligence may be inferred in determining whether the company was or was not guilty of negligence. * * * At any rate, the charge of the court, in this particular, was not unfavorable to the defendant, under the law." *Erie R. Co.* v. *Farrell*, 147 Fed. 220, like the *Ives* case, involved a grade crossing accident. The uncontradicted evidence showed that at the time the plaintiff was struck by the defendant's locomotive the locomotive was moving at a speed in excess of that permitted by the city ordinance. The trial judge instructed the jury, in effect, that this constituted negligence on the defendant's part. He refused to instruct, as requested by the defendant, that the defendant's failure to comply with the ordinance did not in itself constitute conclusive proof of negligence and that it was for the jury to say, in view of the situation

and surroundings in that part of the city and all the circumstances, whether the failure to comply was negligence. In discussing the situation thus presented the circuit court of appeals said: "The rule established by the weight of authority is that the violation of the ordinance is not conclusive evidence of negligence but is to be submitted to the jury as a circumstance from which negligence may be inferred," citing in support of its conclusion the *Ives* case and two other cases, one from Massachusetts and the other from New York.

We know of no decision of the Supreme Court of the United States subsequent to the *Ives* case disapproving or even modifying the observations that were made in that case. On the contrary their soundness has been recognized in many cases both Federal and State. In *Sluder* v. *St. Louis Transit Co.*, 189 Mo. 107, 88 S. W. 648, 5 L. R. A. (N. S.) 186, which is copiously annotated in L. R. A., the annotator says (p. 226): "In several states the violation of a municipal railroad speed ordinance is considered to be evidence only, more or less potent or persuasive, of negligence of the offending railroad company." The first case cited in support of the note is the *Ives* case. This is followed by a large number of citations from various state courts. In *Stevens* v. *Luther*, 105 Neb. 184, the court, after quoting with approval the rule laid down in the *Ives* case, said (p. 189): "There are decisions which at first reading may seem to be inconsistent with this rule, but most of them may be distinguished on account of the different character and purpose of the statutes involved. Statutes requiring protective devices to be placed upon machinery, upon barbed-wire fences, scaffolding statutes, railroad fencing statutes, fire escape statutes, and other statutes of like nature, impose a mandatory and affirmative duty upon the owners of such property, and even in states where the violation of speed statutes

is held to be only evidence from which negligence may be inferred, the courts generally hold that a failure to perform a mandatory duty so enjoined is negligence *per se,* and if any person to whom the duty is owed, or for whose protection the statute is enacted, is injured in consequence of such violation, a case is made. In New York the violation of a statute requiring fire escapes is held to be negligence for which one injured in consequence of the failure to supply the required appliances is liable in damages. The cases of *Strahl* v. *Miller,* 97 Neb. 820, and *Hoopes* v. *Creighton,* 100 Neb. 510, considering a statute relating to fire protection by hotel keepers, *Vanderveer* v. *Moran,* 79 Neb. 431, a statute relating to guarding barbed-wire fences, *McCarthy* v. *Ravenna,* 99 Neb. 675, a statute requiring machine shafting to be guarded, *Butera* v. *Mardis Co.,* 99 Neb. 815, a statute relating to hoists and scaffolds, are cases illustrating the latter principle. Other cases stating the same principle are cited in the opinion in the case last mentioned. Statutes limiting the speed of vehicles are upon a different footing. There is a general duty upon drivers of street cars, automobiles, and vehicles generally, to use due care for the rights of others when driving upon streets and in crossing intersections. The exercise of due care demands that such vehicle, especially at crowded intersections, move at a moderate rate of speed. A statute or an ordinance which seeks to prescribe a limit of speed upon streets or intersections, and forbids a greater speed, may make an act unlawful and subject the doer to punishment where before its enactment no breach of law existed; but while in some instances the speed of a vehicle may of itself constitute negligence, in other instances, although the act may be unlawful in the sense that the doer is liable to punishment, no reasonable mind would say that the act was negligent of itself. Take, for example, the statute under consideration, which provides

that it is unlawful to operate an automobile at intersections of streets within a city at a speed exceeding 6 miles an hour. We all know that in the great majority of cities, many of which in this state have less than 3,000 inhabitants, to drive across the intersections of streets at 7, 8, 10, or 12 miles an hour is entirely consistent with the exercise of due care, and therefore, except under special circumstances, it is not negligence. In fact, circumstances may arise where, in order to avoid an accident, it would be negligence not to exceed the statutory limit."

In *Chicago, B. & Q. R. Co.* v. *Metcalf,* 44 Neb. 848, the court said (p. 860) : "We cannot see that any distinction in kind arises between a case where the defendant has violated a statutory obligation and one where he has violated the common law obligation to conduct himself for the safety of others in such a manner as one of ordinary prudence would conduct himself under similar circumstances. We see no reason for carving out an exception to the general rule of negligence in such a case as this, and the current of decisions of this court compels a result in accordance with that reached by adopting a general rule." The supreme court of New Jersey, in *Paulsen* v. *Klinge,* 92 N. J. L. 99, took a similar view. The court said (p. 101) : "The common law rules applicable to negligence have not been abolished by the enactment. Its existence but adds an additional factor to be considered in given situations by which negligence may be measured and determined between conflicting claimants exercising a common right. The situation contemplated by the legislature must be present in fact in order to invoke the legislative regulation as an exclusive element to be considered in weighing the comparative tort feasance of the parties; and in any event, as the court of errors and appeals has determined, at the present term in the case of *Winch* v. *Johnson, post, p.* 219, not unlike the case at bar in mate-

rial particulars, the negligence of the defendant is to be determined upon all the facts and circumstances of the situation, and, therefore, the conceded violation of the statutory regulation, by a defendant, does not *per se* warrant the trial court in directing a verdict for the plaintiff." The reasoning in these two cases meets with our entire approval.

That the failure to observe a well recognized common-law measure of prudence is not in all cases negligence as a matter of law, but may be negligence as a matter of fact, according to the judgment of the jury, is recognized by this court in *Andrade* v. *O. R. & L. Co.,* 27 Haw. 381. Andrade, who was driving an automobile along a public street in Honolulu, went upon a bisecting railroad track without continuously observing, up to the moment of the accident, the "stop, look and listen" rule of the common law. His car was struck by the defendant's train and his wife was killed. In an action for damages the court below held that he could not recover because his failure to observe the common-law rule establishing the measure of care required of him was negligence as a matter of law, and directed a verdict for the defendant. This court in reversing the judgment said (p. 395) : "Nor do the former decisions of this court permit the adoption of the minority rule obtaining in Pennsylvania and elsewhere that a plaintiff is negligent as a matter of law in every case if he does not stop, look and listen before crossing a railroad track * * *. To so hold would, in our opinion, be an unwarranted interference with the province of the jury."

In most of the foregoing cases the conduct of the defendant only was under consideration but of course the plaintiff's conduct is but the counterpart of the question and must be gauged by the same rules. In other words, whether the plaintiff's violation of a statute or ordinance is negligence as a matter of law must be determined upon

64

the same principles as those which are applicable to a similar dereliction by the defendant.

So far as the instruction under review relates to the other ordinance we think it should not have been given, if for no other reason, because it was calculated to mislead the jury. The second clause of this ordinance provides that "no person or persons shall impede the right of travel of any vehicle or street car." In view of the plaintiff's testimony that the engine of his Ford car stalled after he got on the defendant's track, the jury might, if it believed this testimony, have felt obliged under the instruction to find that he violated the ordinance by impeding the right of travel of the street car, whether the stalling of the engine was due to his fault or not, and was therefore guilty of negligence. If the stalling of the engine (provided it did in fact stall) was without the plaintiff's procurement the resulting impediment to the street car could not be charged to him and would not therefore constitute a violation of the ordinance. This should have been explained to the jury.

For the foregoing reasons the exception is sustained, the verdict of the jury is set aside and a new trial granted.

*J. B. Lightfoot* (also on the brief) for plaintiff.

*J. G. Anthony* (*Robertson & Castle* on the brief) for defendant.