MASAICHI ONO, Plaintiff-Appellee, *v.* H. JON APPLEGATE, doing business as SAND TRAP, and CHARLES R. WETTER, ESQ., as Administrator of the Estate of SAMANTHA JUDITH SCRITCHFIELD, Deceased, Defendants-Appellants

NO. 5975

JUNE 6, 1980

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR, JJ., AND RETIRED JUSTICE MARUMOTO IN PLACE OF KIDWELL, J., ABSENT

OPINION OF THE COURT BY OGATA, J.

H. Jon Applegate, doing business as the Sand Trap, a defendant in the actions below, has appealed the decision of the Second Circuit Court in favor of appellee Masaichi Ono, one of the plaintiffs below.

On May 19, 1973, Samantha Scritchfield was the driver of a car which collided head-on with a car containing Thomas Tagawa, James Tagawa, and Masaichi Ono in Lahaina, Maui. James Tagawa and Masaichi Ono sustained serious bodily injuries due to the accident. Thomas Tagawa, Samantha Scritchfield, and Jose Montez, a passenger in the Scritchfield vehicle, were killed in the collision. Prior to the collision, Ms. Scritchfield had been drinking alcoholic beverages at her apartment and later at a bar called the Sand Trap in Kaanapali. The accident occurred late in the evening after Ms. Scritchfield left the Sand Trap.

As a result of the accident, two actions were brought in the Second Circuit Court, Maui, Hawaii. In Civil No. 2293, James Tagawa and Dorothy Tagawa, wife of Thomas Tagawa, sued the Estate of Samantha Scritchfield and H. Jon Applegate, doing business as the Sand Trap. In Civil No. 2311, Masaichi Ono also sued Ms. Scritchfield and the Sand Trap. In March, 1974, all the parties agreed to consolidate the actions for a jury trial.

The plaintiffs below alleged that Ms. Scritchfield, while in an intoxicated state, negligently operated her automobile so as to cause the collision between the two vehicles. The plaintiffs also sued the Sand Trap for negligently supplying alcohol to Ms. Scritchfield, who was already under the influence of liquor at the time she entered the bar, and for negligently allowing her to leave the Sand Trap in an intoxicated condition. Such a sale of alcohol is prohibited by HRS § 281-78(a)(2)(B)(1976), which states that no licensee under that chapter shall sell or furnish liquor to any person who is at that time under the influence of liquor.

Prior to trial, defendant-appellant Sand Trap moved to dismiss the actions against it pursuant to Rule 12(b)(6), Hawaii Rules of Civil Procedure. The Sand Trap argued that where an intoxicated person injures another in an automobile accident, this jurisdiction, in the absence of a Dram Shop Act, does not permit the injured third person to recover from the liquor dispenser who negligently provided alcohol to the intoxicated driver. The sole question presented by the Motion to Dismiss was, therefore, whether a common law dram shop action existed in Hawaii. The court below denied the Motion to Dismiss, thereby allowing the common law action, and the case proceeded to trial. During the trial, defendant-appellant Sand Trap also objected to the admission of certain evidence and to one of the trial court's instructions to the jury.

On April 30, 1975, the jury returned a special verdict in favor of the plaintiffs. The jury stated that defendant Scritchfield was 75% at fault and that defendant Sand Trap was 25% at fault. Defendant-appellant Sand Trap then made motions for Directed Verdict, Judgment Notwithstanding the Verdict, New Trial, and Remittitur, all of which were denied by the court below. The instant appeal by the Sand Trap Followed.[1] For the reasons hereinafter set forth, we affirm the decision of the court below.

---

[1] The appeal was taken from the judgments in both Civil No. 2293 and Civil No. 2311. In February, 1976, a Satisfaction of Judgments and a Stipulation for Withdrawal of Appeal and Cross-Appeal were filed in the court below by the Tagawas in Civil No. 2293. Masaichi Ono is therefore the sole appellee involved in this appeal.

The dispositive issue in this appeal is whether a person who is injured by an inebriated automobile driver may recover, in the absence of dram shop legislation,[2] from the tavern that provided alcohol to the driver in violation of this jurisdiction's liquor control law.[3]

Under the old common law rule, an injured third party could not recover against a supplier of liquor for injuries suffered as a result of the tavern patron's intoxication. Courts advanced two rationales to support this rule. First, the proximate cause of both the patron's intoxication and the subsequent injury to the third party was held to be the consumption of the liquor, not its sale or service. Second, even if the sale or service of liquor were found to have caused the patron's intoxication, the later injury to another person was thought to be an unforeseeable result of the furnishing of the liquor. Liability therefore could not attach to the tavern for serving alcoholic beverages to an intoxicated person.

In recent years, numerous courts have refused to follow the old rule of non-liability and have allowed the injured person to recover from the liquor supplier. *Vesely v. Sager,* 5 Cal.3d 153, 486 P.2d 151, 95 Cal. Rptr. 623 (1971), is a leading case in this area. In *Vesely,* an injured motorist brought an action against a tavern owner for injuries sustained when his automobile was struck by a car driven by an intoxicated tavern customer. The tavern had served alcohol to the intoxicated patron in violation of California's liquor control law. At the time of the suit, California, as in this jurisdiction, did not

---

[2] Approximately twenty-one states possess some form of dram shop legislation. Generally, these statutes allow certain classes of persons to sue a tavern which supplies liquor to the customer who then proceeds to injure a third person. *See* 23 S.D.L. Rev. 227 n. 3 (1978) for examples of current dram shop acts.

[3] HRS § 281-78(a)(2)(B)(1976) states, in relevant part:

§ 281-78 *Prohibitions.* (a) At no time under any circumstances shall any liquor:

    (1) Be consumed on any public highway or any public sidewalk;

    (2) Be sold or furnished by any licensee to:

        (A) Any minor.

        (B) Any person at the time under the influence of liquor. . . .

Violation of this section is punishable by the revocation or suspension of the tavern's license. HRS § 281-91 (1976).

have any type of dram shop legislation.[4] After reviewing the old common law rule and a number of prior cases, the Supreme Court of California permitted the establishment of a common law dram shop action based on a negligence analysis. *Vesely, supra* at 160-65, 486 P.2d at 155-60, 95 Cal. Rptr. at 627-31.

The *Vesely* court held that the sale or service of alcoholic beverages could indeed be the proximate cause of injuries to a third person by the intoxicated consumer of the beverages. The court stated:

> Insofar as proximate cause is concerned, we find no basis for a distinction founded solely on the fact that the consumption of an alcoholic beverage is a voluntary act of the consumer and is a link in the chain of causation from the furnishing of the beverage to the injury resulting from intoxication. . . . [I]t is clear that the furnishing of an alcoholic beverage to an intoxicated person may be a proximate cause of injuries inflicted by that individual upon a third person.

*Vesely, supra* at 164, 486 P.2d at 159, 95 Cal. Rptr. at 631.

The court also held that the injury to a third person due to the patron's inebriation was a foreseeable result of the tavern's furnishing of liquor to an intoxicated person in violation of California's liquor control statute. The court stated that the consumption of liquor, the resulting intoxication, and the injury-producing conduct were foreseeable intervening causes which would not relieve the tavern of liability. *Id.*

Other jurisdictions that, in the absence or inapplicability of dram shop legislation, have employed a similar analysis have also allowed recovery against the tavern for injuries received by a third person as a result of a customer's intoxication. *See Troglia v. United States*, 602 F.2d 1334 (9th Cir.

---

[4] In 1978, the California Legislature specifically reversed the Court's activity in the area of supplier liability to third persons. While it remains a misdemeanor for any person to sell or give alcohol to an obviously intoxicated person, no civil liability can attach from a violation of the law. In essence, the legislature returned California to the old common law status of non-liability for suppliers of alcohol. *See* 1978 Cal. Stats. 3244, ch. 929; 1978 Cal. Stats. 3245, ch. 930; 12 U.C.D.L. Rev. 191 (1979). We still find the rationales contained within *Vesely, supra*, helpful to the resolution of the instant appeal.

1979); *Marusa v. District of Columbia*, 484 F.2d 828 (D.C. Cir. 1973); *Waynick v. Chicago's Last Dept. Store*, 269 F.2d 322 (7th Cir. 1959); *Vance v. United States*, 355 F.Supp. 756 (D.Alas. 1973); *Deeds v. United States*, 306 F.Supp. 348 (D. Mont. 1959); *Taylor v. Ruiz*, 394 A.2d 765 (Del. Super. 1978); *Lewis v. State*, 256 N.W.2d 181 (Iowa 1977); *Campbell v. Carpenter*, 279 Ore. 237, 566 P.2d 893 (1977); *Pence v. Ketchum*, 326 So.2d 831 (La. 1976); *Thaut v. Finley*, 50 Mich. App. 611, 213 N.W.2d 820 (1974); *Trail v. Christian*, 298 Minn. 101, 213 N.W.2d 618 (1973); *Taggart v. Bitzenhofer*, 35 Ohio App.2d 23, 299 N.E.2d 901 (1972); *Pike v. George*, 434 S.W.2d 626 (Ky. 1968); *Adamian v. Three Sons, Inc.*, 353 Mass. 498, 233 N.E.2d 18 (1968); *Prevatt v. McClennan*, 201 So.2d 780 (Fla. App. 1967); *Elder v. Fisher*, 247 Ind. 598, 217 N.E.2d 847 (1966); *Ramsey v. Anctil*, 106 N.H. 375, 211 A.2d 900 (1965); *Berkeley v. Park*, 47 Misc.2d 381, 262 N.Y.S.2d 290 (1965); *Jardine v. Upper Darby Lodge No. 1973, Inc.*, 413 Pa. 626, 198 A.2d 550 (1964); *Mitchell v. Ketner*, 54 Tenn. App. 656, 393 S.W.2d 755 (1964); *Colligan v. Cousar*, 38 Ill. App.2d 392, 187 N.E.2d 292 (1963); *Rappaport v. Nichols*, 31 N.J. 188, 156 A.2d 1 (1959); *see generally* W. Prosser, Handbook of the Law of Torts § 104, at 678-79 (4th ed. 1971).

The reasoning in *Vesely*, combined with the clear trend demonstrated by the authorities cited above, persuades this court to allow a person injured by an inebriated tavern customer to recover from the tavern that provided liquor to the customer.[5] The elements of the common law dram shop action in this jurisdiction are set out below.

---

[5] We do not decide in this appeal whether a non-commercial supplier of liquor may be held liable for injuries caused by the intoxicated person. We note that courts in some states have allowed injured third persons to recover against a social host who negligently provides alcohol to an inebriated guest. *See* 44 Mo.L. Rev. 757, 769 (1979); 63 Iowa L.Rev. 1282, 1296 (1978). The court in Jardine v. Upper Darby Lodge No. 1973, Inc., *supra* at 631, 198 A.2d at 553 stated:

> The first prime requisite to deintoxicate one who has, because of alcohol, lost control over his reflexes, judgment and sense of responsibility to others, is to stop pouring alcohol into him. This is a duty which everyone owes to society and to law entirely apart from any statute.

Once a duty on the part of the social host has been found, the courts follow an analysis similar to that set out in the instant appeal. *See. e.g.*, Brattain v. Herron, 159 Ind. App. 663, 309 N.E.2d 150 (1974).

Under the common law, a person who has sustained injuries due to the negligent conduct of another may recover against the tortfeasor provided that the negligent behavior was the proximate cause of the injuries suffered. *Fujioka v. Kam*, 55 Haw. 7, 10, 514 P.2d 568, 570 (1973); Restatement (Second) of Torts § 281 (1965). Professor Prosser has analyzed the negligence action in terms of four necessary elements:

> 1. A duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks.
> 2. A failure on his part to conform to the standard required. . . .
> 3. A reasonable close causal connection between the conduct and the resulting injury. . . .
> 4. Actual loss or damage resulting to the interests of another. . . .

W. Prosser, *supra* § 30, at 143. In order to resolve the issues raised in this appeal, we need only discuss the duty and proximate cause elements of a common law dram shop negligence action.

It is clear from the record that the defendant-appellant Sand Trap served alcohol to Ms. Scritchfield while she was under the influence of liquor, in violation of HRS § 281-78(a)(2)(B)(1976).[6] The question is whether this statute imposed a duty of care upon the Sand Trap so that its violation of the law may be used by Ms. Scritchfield's estate to establish a claim of negligence.

Generally, a standard of conduct may be determined by reference to a statute. The Restatement (Second) of Torts states:

> § 285. How Standard of Conduct is Determined
> The standard of conduct of a reasonable man may be
>> (a) established by a legislative enactment or administrative regulation which so provides, or

---

[6] *See* note 3, *supra* for text of HRS § 281-78(a)(2)(B)(1976).

    (b) adopted by the court from a legislative enactment or an administrative regulation which does not so provide, or

    (c) established by judicial decision, or

    (d) applied to the facts of the case by the trial judge or the jury, if there is no such enactment, regulation, or decision.

We also quote comment c to this section:

    (c) *Standard adopted from legislation*. Even where a legislative enactment contains no express provision that its violation shall result in tort liability, and no implication to that effect, the court may, and in certain types of cases customarily will, adopt the requirements of the enactment as the standard of conduct necessary to avoid liability for negligence. . . .

We hold that this jurisdiction's liquor control statute does impose a duty upon a tavern keeper not to serve a person under the influence of liquor. *See Marusa v. District of Columbia, supra* at 833; *Waynick v. Chicago's Last Dept. Store, supra* at 325; *Vesely v. Sager, supra* at 164, 486 P.2d at 159, 95 Cal. Rptr. at 631; *Adamian v. Three Sons, Inc., supra* at 499, 233 N.E.2d at 19; *Berkeley v. Park*, 262 N.Y.S.2d at 293. Defendant-appellant Sand Trap's violation of HRS § 281-78(a)(2)(B) in serving Ms. Scritchfield therefore properly was submitted to the jury as evidence of negligence. *See Michel v. Valdastri, Ltd.*, 59 Haw. 53, 55, 575 P.2d 1299, 1301 (1978); *Sherry v. Asing*, 56 Haw. 135, 149, 531 P.2d 648, 658 (1975); *Young v. Honolulu Constr. & Draying Co., Ltd.*, 34 Haw. 426, 435 (1938); *Char v. Honolulu Rapid Transit Co., Ltd.*, 31 Haw. 53, 58 (1929).

    Before a violation of HRS § 281-78(a)(2)(B)(1976) can be found, notice or knowledge on the part of defendant-appellant Sand Trap that Ms. Scritchfield was under the influence of liquor at the time she was served alcohol must be established. *See Anslinger v. Martinsville Inn, Inc.*, 121 N.J. Super. 525, 532, 298 A.2d 84, 87 (1972); *cf. Territory v. Hall*, 17 Haw. 536, 538 (1906) (knowledge requirement imposed in sale of liquor to a minor). Jury Instruction No. 20 states as follows:

    Instruction Number 20, the statutory law of Hawaii

and Maui Liquor Regulations provide that the holder of a liquor license such as defendant Sand Trap, shall not sell liquor to any person under any circumstance who is at the time of such sale under the influence of liquor. That law further defines the terms "under the influence of liquor" as follows:

"Under the influence of liquor means that the person considered has consumed intoxicating liquor sufficient to impair, at the particular time under inquiry, his normal mental faculties or ability to take care of himself, and guard against casualty, or sufficient to substantially impair at the time under the inquiry that clearness of intellect and control of himself, which he would otherwise normally possess."

Plaintiffs in order to prove a violation of this law have the burden of establishing by a preponderance of the evidence that Samantha Scritchfield was under the influence of intoxicating liquor at any time she was served by defendant Sand Trap; and *that defendant Sand Trap knew or reasonably should have known that Samantha Scritchfield was under the influence of intoxicating liquor at the time she was so served.* (Emphasis added.)

The defendant-appellant objected to the above jury instruction on two grounds. First, the Sand Trap contended that the knowledge or notice requirement was not clearly stated to and understood by the jury. We find Jury Instruction No. 20 to be clear. The first paragraph states the applicable liquor control law, the second paragraph defines "under the influence of liquor," and the third paragraph imposes the notice or knowledge requirement upon the Sand Trap for liability to occur. Second, defendant-appellant argued that the instruction imposed liability after only one drink on the part of the tavern patron. Jury Instruction No. 21 resolves this contention. It states:

Instruction number 21, one is not necessarily under the influence of intoxicating liquor while operating a motor vehicle as a result of taking one or more drinks. The circumstances and effects must be considered. Whether a person was under the influence of intoxicating liquor

while operating a motor vehicle is a question of fact for the jury to decide.

The trial court did not err when it gave Jury Instructions Nos. 20 and 21.

The defendant-appellant also objected to the admission of evidence showing that Ms. Scritchfield had been drinking prior to her arrival at the Sand Trap on the grounds that such evidence was irrelevant and without foundation. The amount of liquor that Ms. Scritchfield consumed before she entered the Sand Trap was relevant to the issue of her apparent state of intoxication. As to the alleged lack of a proper foundation, the defendant-appellant contends that the plaintiff should have established that the Sand Trap had actual knowledge of Ms. Scritchfield's earlier consumption of liquor. We disagree. The important issue here is whether the Sand Trap had *notice* that Ms. Scritchfield was under the influence of liquor at the time she was served. Ms. Scritchfield's prior drinking and her subsequent behavior in the bar were among the factors from which the jury could have determined whether Sand Trap knew or reasonably should have known that she was under the influence of liquor at the time she was served. Evidence on this point was therefore properly admitted. *See, e.g., Diaz v. Faulkner*, 293 F.2d 286, 288 (6th Cir. 1961).

We now turn our attention to the proximate cause element of a common law dram shop action. A tavern's sale or service of alcohol to an intoxicated automobile driver may be the proximate cause of injuries inflicted upon a third party by the inebriated driver. *Deeds v. United States, supra* at 361; *Lewis v. State, supra* at 191-92; *Vesely v. Sager, supra* at 164, 486 P.2d at 159, 95 Cal. Rptr. at 631. The question arises whether the consumption of alcohol and subsequent acts of the inebriated consumer are intervening causes sufficient to release the tavern from liability for injuries to the third party. It is well-settled that intervening acts will not relieve the original wrongdoer of liability if those acts are reasonably foreseeable. *Collins v. Greenstein*, 61 Haw. 27, 43, 595 P.2d 275, 284-85 (1979); *Elder v. Fisher, supra* at 606, 217 N.E.2d at 852; *Mitchell v. Branch*, 45 Haw. 128, 138, 363 P.2d 969, 976

(1961); Restatement (Second) of Torts § 447; 63 Iowa L.Rev. 1282, 1292 (1978).

We hold that the consequences of serving liquor to an intoxicated motorist, in light of the universal use of automobiles and the increasing frequency of accidents involving drunk drivers, are foreseeable to a tavern owner. *Deeds v. United States, supra; Adamian v. Three Sons, Inc., supra* at 501, 233 N.E.2d at 20; *Berkeley v. Park*, 262 N.Y.S.2d at 293. The consumption, resulting inebriation and injurious conduct are therefore foreseeable intervening acts which will not relieve the tavern of liability.

The court below acted properly in denying the Motion to Dismiss and in allowing the plaintiff-appellee Ono to bring a common law dram shop action against defendant- appellant Sand Trap. The complaint did state a claim upon which relief could be granted and the plaintiff-appellee was entitled to be heard on the merits. *Gonsalves v. Gilbert*, 44 Haw. 543, 555, 356 P.2d 379, 385 (1960). Further, the jury's determination that the Sand Trap was 25% liable for Mr. Ono's injuries was supported by substantial evidence. *Harkins v. Ikeda*, 57 Haw. 378, 382 n. 6, 557 P.2d 788, 792 n. 6 (1976); *State Savings & Loan Ass'n. v. Corey*, 53 Haw. 132, 141, 488 P.2d 703, 709 (1971). We therefore refuse to set the verdict aside.

Affirmed.

*Peter C.-P. Char (Cades Schutte Fleming & Wright* of Counsel) for defendant-appellant.

*Gerald Y. Sekiya (Cronin, Fried, Sekiya, Haley & Kekina* of Counsel) for plaintiff-appellee.